UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Paul Thulin,

                          Plaintiff,

                                                       Civ. No. 06-3514 (RHK/JSM)
                                                      **MEMORANDUM OPINION**
                                                       **AND ORDER**

v.

EMC Mortgage Corporation,

                          Defendant.

Richard Raver, Smith & Raver, LLP, Minneapolis, Minnesota, for Plaintiff.

James M. Jorissen, Eldon J. Spencer, Jr., Leonard, O'Brien, Spencer, Gale & Sayre, Ltd., Minneapolis, Minnesota, for Defendant.

      In this action, Plaintiff Paul Thulin alleges that Defendant EMC Mortgage Corporation ("EMC") improperly informed the major credit-reporting bureaus that he had made several late mortgage payments. Thulin asserts violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), and the Fair Debt Collection Practices Act of 1977, 15 U.S.C. § 1692 *et seq.* ("FDCPA"); Thulin also asserts related claims under Minnesota law. EMC now moves for summary judgment. For the reasons set forth below, the Court will grant EMC's Motion.

**BACKGROUND**

      At all relevant times, Thulin owned and operated a residential-home rent-to-own business called Granite Banc Development Corporation ("Granite Banc"). (Am. Compl. ¶

3; Thulin Dep. Tr. at 20-21, 25.) Granite Banc focused its business on clients with good incomes but less-than-stellar credit who, as a result of their credit problems, could not obtain home loans on favorable terms. (Id. at 27.) These clients would locate homes they wished to purchase, and Thulin (as owner of Granite Banc) would purchase those homes on the clients' behalf; he would then rent the properties to the clients under 12-month rent-to-own contracts. (Id.)[1] During those twelve months, Granite Banc provided credit-repair services to the clients. Ultimately, the clients would purchase the homes from Thulin, with a predetermined markup, on acceptable mortgage terms (thanks to Granite Banc's credit-repair services) when the rent-to-own periods expired. (Id. at 27-29.)

Although EMC was not the originating lender for the mortgage loans obtained by Thulin in connection with Granite Banc's business, ultimately it purchased (or was assigned for servicing) several of those mortgage loans from the originating lenders. (Id. at 59.) The payments on most of these loans were due on the first day of the month. (Id. at 67.) Thulin, however, admittedly mailed payments to EMC on the second-to-last day of each month, nearly four weeks after the loans' due dates. (Id. at 67-68.)[2] As a result, EMC reported Thulin's payments as late to the major credit bureaus. (Id. at 208.) According to Thulin, these reports of late payments so severely damaged his credit rating that he was no

---

[1] Thulin, not Granite Banc, was the borrower and signatory on the notes and mortgages for the rent-to-own properties, because (according to Thulin) it would have been difficult for a corporation to obtain financing for residential home purchases. (Id. at 29-31.)

[2] Thulin testified at his deposition that, on EMC's website, the company stated that it was acceptable for borrowers to make payments in this fashion. (Thulin Dep. Tr. at 68-69.) He has proffered no evidence to support that assertion, however.

longer able to obtain mortgage loans from banks or other lenders, which caused Granite Banc to go out of business.  (Am. Compl. ¶¶ 11-12; Thulin Dep. Tr. at 211-21, 226-29.)

On August 9, 2006, Thulin commenced the instant action against EMC in Hennepin County District Court; EMC timely removed the action to this Court.  In his Amended Complaint, he alleges that EMC misplaced, misapplied, or otherwise mishandled several timely payments he had made on the mortgage loans, and then improperly reported those payments as late to the credit bureaus.  (Am. Compl. ¶¶ 5-6, 17.)  In addition, he alleges that EMC telephoned him at his workplace in an effort to collect these allegedly late payments and did not stop its "harassing" calls despite being advised to do so.  (Id. ¶ 10.)  Finally, he alleges that EMC improperly kept the proceeds of a mortgage-payment check he had sent to EMC after that mortgage had been sold to a third-party, Mariner Bank.  (Id. ¶ 7.)

Based on the foregoing, Thulin asserts five claims: (i) negligence (Count 1), due to the purported "errors" in the way EMC handled his accounts; (ii) conversion (Count 2), based on EMC keeping the payment for the loan that had been sold to Mariner Bank; (iii) defamation (Count 3) and violation of the Fair Credit Reporting Act (Count 5), due to EMC's allegedly "false" reporting; and (iv) "illegal collection activities" under the FDCPA and Minnesota Statutes section 332.37 (Count 4), due to EMC's repeated

telephone calls to Thulin's workplace in an attempt to collect the "past due" payments. EMC has moved for summary judgment on each.

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

**I.     Negligence (Count 1) and defamation (Count 3)**

EMC first argues that Thulin's negligence and defamation claims are preempted by the FCRA. With certain exceptions not relevant here, the FCRA provides that "no consumer may bring any action . . . in the nature of defamation . . . or negligence . . . against

. . . any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e).[3] Accordingly, in order to survive EMC's Motion, Thulin must come forward with evidence demonstrating that EMC's actions were undertaken with "malice or willful intent to injure" him. Id.; Olwell v. Med. Info. Bureau, Civ. No. 01-1481, 2003 WL 79035, at *5 (D. Minn. Jan. 7, 2003) (Tunheim, J.). Thulin has failed to do so.[4]

In response to EMC's Motion, Thulin points to the Amended Complaint, asserting that the "conduct alleged [therein] is sufficiently outrageous and injurious as to implicate malice on its face." (Mem. in Opp'n at 4.) In resisting the Motion, however, Thulin cannot merely rest on the allegations in the Amended Complaint. Federal Rule of Civil Procedure 56(e) "requires the nonmoving party to go beyond the pleadings and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted). Thulin, therefore, was required to proffer *evidence* tending to establish malice or willfulness on the part of EMC, see Rhodes v. Ford Motor Credit Co., 951 F.2d 905, 906-07 (8th Cir. 1991) – that is, evidence establishing that EMC knew that Thulin had made timely payments, but opted to inform the credit bureaus that his payments were late. See Olwell, 2003 WL 79035, at *5. He has proffered no such evidence; indeed, his

---

[3] A credit bureau, in FCRA parlance, is a "consumer reporting agency."

[4] Of course, Thulin must also establish that the information in his credit reports was "false." 15 U.S.C. § 1681h(e). This, too, poses an insurmountable hurdle, because Thulin admittedly made late payments to EMC. (See Thulin Dep. Tr. at 67-68.)

Memorandum in Opposition nowhere cites any record evidence at all.[5]

Nor can Thulin overcome EMC's Motion by baldly asserting that he "intend[s] to produce witnesses and evidence at trial that will clearly and convincingly demonstrate that EMC is engaged in systematic careless and malicious reporting of false information." (Mem. in Opp'n at 5.)  The purpose of summary judgment is to pierce the allegations in the pleadings and determine, based on the evidence, whether there is a genuine issue of material fact for trial.  "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant.  For factual issues to be considered genuine, *they must have a real basis in the record*."  Ellis v. England, 432 F.3d 1321, 1325-26 (11th Cir. 2005) (emphasis added).  "Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment."  Id.; accord Thomas v. Corwin, 483 F.3d 516, 530 (8th Cir. 2007) ("skeletal allegations, unsupported with *specific facts or evidence*, are insufficient to create a genuine issue of fact so as to preclude summary judgment") (emphasis added).  Here, Thulin has proffered nothing more than unsupported allegations about how unnamed witnesses will testify at trial.  That is simply not enough.  It was incumbent upon Thulin to obtain affidavits (or deposition transcripts) from those witnesses and to submit those affidavits or transcripts in opposition to EMC's Motion, rather than simply asserting, in conclusory fashion, that the

---

[5] If a plaintiff signs the complaint and verifies the contents therein are true, under penalty of perjury, the complaint is then treated like an affidavit for summary-judgment purposes.  E.g., Roberson v. Hayti Police Dep't, 241 F.3d 992, 995 (8th Cir. 2001).  The Amended Complaint in this case is not verified.

witnesses will "clearly and convincingly" establish EMC's malice at trial. See Fed. R. Civ. P. 56(c), (e). Similarly, if Thulin possesses documents or other non-testimonial evidence tending to establish malice on the part of EMC, he was required to submit that evidence to the Court and identify how it creates a genuine issue of fact. His failure to do so is fatal.[6]

Thulin asserts that summary judgment is "premature," because "[t]his is a complex case, requiring extensive investigation among multiple complex areas of law," and because he is "continu[ing] to interview witnesses who can attest to . . . the purposeful malfeasance on the part of EMC." (Mem. in Opp'n at 2-3.) In the Court's view, there is nothing particularly unique or complicated about the claims in this case that would render summary judgment premature at this juncture. Moreover, it is too late for Thulin to be raising such an argument. Under the Pretrial Scheduling Order (Doc. No. 7), the discovery period closed on June 1, 2007, some eight months after discovery first was available to the parties. Thulin has nowhere specified why that period was insufficient for him to locate witnesses or other evidence in support of his claims. And, if Thulin needed additional discovery before responding to EMC's Motion, he could have filed an affidavit consistent with Federal Rule of Civil Procedure 56(f). He cannot be heard to complain now after not having availed himself of the protections afforded by that Rule.

Accordingly, the Court concludes that Thulin's negligence (count 1) and defamation

---

[6] In any event, the Court also notes that Thulin admitted in his deposition that EMC's actions had been merely negligent and were not undertaken with any intent to injure him. (See Thulin Dep. Tr. at 151-52.) This admission undermines his negligence and defamation claims.

(count 3) claims are preempted by the FCRA, because he has failed to create a genuine issue as to whether EMC's actions were undertaken with malice or willful intent to injure him.

## II.  Conversion (Count 2)

In Count 2, Thulin alleges that EMC converted a May 30, 2006 check, which was the May 2006 mortgage payment for a property purchased in connection with Granite Banc's business. According to Thulin, EMC had no right to keep the proceeds of the check because it had sold the mortgage to Mariner Bank prior to receiving the payment. (Am. Compl. ¶¶ 7-8.) In arguing for summary judgment on this claim, EMC asserts that Thulin had no enforceable property interest in the check under the Uniform Commercial Code ("U.C.C.") and that Thulin lacks standing to sue for conversion because the check was drawn on Granite Banc's account, not Thulin's. (See Def. Mem. at 14-16.) EMC also argues (albeit in cursory fashion) that this claim is simply wrong on the facts. (Id. at 16.) Because the undisputed record supports this latter argument, the Court need not address EMC's former arguments concerning standing and the U.C.C.

According to the record, Thulin has his facts backward: it was *EMC* that acquired the mortgage from Mariner Bank prior to Thulin submitting the May 2006 payment, not the other way around. (See Delaura Aff. ¶ 5.) EMC, therefore, actually held the mortgage when it received the May 30, 2006 check and, hence, it was entitled to apply the proceeds of that check to the mortgage balance. Moreover, Thulin has conceded that the proceeds of the check were used to reduce the mortgage balance and were not converted to some other

use. (See Thulin Dep. Tr. at 378-79.) Thulin proffers *no* evidence to contradict these facts; as before, he offers nothing more than his "contention" that EMC somehow "misapplied" the proceeds of this check, without citing any evidence. (Mem. in Opp'n at 6.)

Based on the uncontroverted facts in the record, there cannot have been a conversion as a matter of law. See DLH, Inc. v. Russ, 566 N.W.2d 60, 71 (Minn. 1997) (conversion requires willful interference with personal property without lawful justification). Accordingly, EMC is entitled to summary judgment on this claim.

### III. The FDCPA and related state law (Count 4)

In Count 4, Thulin asserts that EMC engaged in "illegal collection practices" under the FDCPA and Minnesota Statutes section 332.37 by making "hundreds of harassing telephone calls . . . to the Plaintiff at his workplace and home." (Mem. in Opp'n at 6.) EMC argues that it does not fall within the ambit of either statute because it is neither a "debt collector" under the FDCPA nor a "collection agency or collector" under Minnesota Statutes section 332.37. (Def. Mem. at 18-21.) The Court agrees that EMC is not a "debt collector" under the FDCPA. It further concludes that Thulin has abandoned his claim under Section 332.37.

#### A. FDCPA

The FDCPA restricts the time, place, and manner in which a debt collector may communicate with a debtor in an attempt to collect a debt. See 15 U.S.C. § 1692c(a). If a debtor advises the debt collector to cease communicating with him, the debt collector must do so, with limited exceptions. See 15 U.S.C. § 1692c(c). Here, Thulin asserts that EMC

violated Sections 1692c(a) and (c) by making "dozens of collection calls" to him at his workplace, and by failing to stop making the calls after being advised that Thulin wished for them to stop. (Am. Compl. ¶¶ 38, 40.)

By their very terms, however, these sections of the FDCPA apply only to "debt collectors." Under the statute, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The statute also expressly excludes six specific types of debt collectors from its reach, including "any person collecting or attempting to collect any debt owed . . . to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). The law is well established that "a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985); accord Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 536 (7th Cir. 2003); Montgomery v. Huntington Bank, 346 F.3d 693, 698 (6th Cir. 2003).

Here, there is no dispute that Thulin's mortgage accounts were not in default when they were acquired by EMC. (Thulin Dep. Tr. at 59.) Accordingly, EMC's attempts to collect these loans cannot have rendered EMC a "debt collector" as a matter of law. See 15 U.S.C. § 1692a(6)(F)(iii). Thulin argues that "[b]y virtue of the hundreds of harassing

telephone calls that EMC made to the Plaintiff at his workplace and home, EMC acted as a debt collector." (Mem. in Opp'n at 6.) Thulin cites no authority, however, suggesting that the number of telephone calls or other communications made to a debtor can sweep an otherwise exempt entity within the ambit of the FDCPA's definition of "debt collector," and the Court is unaware of any.

Accordingly, Thulin's FDCPA claim fails.[7]

### B. Minnesota Statutes section 332.37

EMC devotes five pages of its Memorandum to arguing that Thulin's claim under Minnesota Statutes section 332.37 fails because (1) EMC is neither a "collection agency" nor a "collector" and, hence, lies beyond the statute's reach and (2) there is no private right of action for a violation of the statute. (Def. Mem. at 20-24.) In his Memorandum in Opposition, Thulin nowhere addresses EMC's arguments; he only addresses the FDCPA:

> By virtue of the hundreds of harassing telephone calls that EMC made to the Plaintiff at his workplace and home, EMC acted as a debt collector. A jury could reasonably conclude that, within the letter and spirit of the Fair Debt Collections Act (FDCA), EMC, [*sic*] and that its conduct was consistent with the abusive collections practices that the FDCA was enacted to prevent. It is the proper function of a jury to determine whether the disputed payments in question in this case were debts under the FDCA, and whether EMC violated the FDCA by its conduct.

(Mem. in Opp'n at 6-7.) By not mentioning the state-law claim, Thulin has abandoned it.

---

[7] EMC also argues that the debts Thulin owed are not covered by the FDCPA because they were incurred in connection with Thulin's rent-to-own business and not "primarily for personal, family, or household purposes." (Def. Mem. at 18.) While there appears to be merit to this argument, see 15 U.S.C. § 1692a(5), it is unnecessary to address it because the Court concludes that EMC is not a "debt collector" under the Act.

See, e.g., A.C. ex rel. M.C. v. Independent Sch. Dist. No. 152, Civ. No. 06-3099, 2006 WL 3227768, at *4 (D. Minn. Nov. 7, 2006) (Frank, J.) (holding that plaintiff abandoned claims by failing to address defendant's argument in his response to defendant's summary-judgment motion); Stieg v. Pattonville-Bridgeton Terrace Fire Prot. Dist., 374 F. Supp. 2d 777, 786 (E.D. Mo. 2005) (same).

## IV.   FCRA (Count 5)

In Thulin's final claim, he alleges that EMC violated the FCRA by (1) reporting information to the credit bureaus with actual knowledge that the information was inaccurate, (2) failing to correct those errors after notice, and (3) failing to conduct an investigation into the alleged errors. (Am. Compl. ¶ 46.) This claim also fails.

In relevant part, the FCRA requires a creditor who furnishes information to a credit bureau (1) to provide accurate information, see 15 U.S.C. § 1681s-2(a), and (2) to undertake an investigation upon receipt of a notice of dispute regarding information that it has furnished, see 15 U.S.C. § 1681s-2(b). Yutesler v. Sears Roebuck & Co., 263 F. Supp. 2d 1209, 1210-11 (D. Minn. 2003) (Frank, J.). Thulin asserts that EMC has violated both Section 1681s-2(a) and Section 1681s-2(b).

As EMC points out, however, there is no private right of action against one who furnishes inaccurate information to a credit bureau in violation of Section 1681s-2(a). The FCRA expressly provides that a violation of Section 1681s-2(a) "shall be enforced exclusively . . . by the Federal agencies and officials and the State officials identified in section 1681s." 15 U.S.C. § 1681s-2(d). Accordingly, "[t]he duties imposed by Section

1681s-2(a) are not subject to private rights of action." Yutesler, 263 F. Supp. 2d at 1210-11; accord Gordon v. Greenpoint Credit, 266 F. Supp. 2d 1007, 1010 (S.D. Iowa 2003) ("The FCRA . . . leav[es] enforcement of § 1681s-2(a) to the Federal and State agencies and officials identified in § 1681s."); Lowe v. Surpas Res. Corp., 253 F. Supp. 2d 1209, 1253 (D. Kan. 2003) ("Congress . . . did not create a private right of action for violations of § 1681s-2(a).").[8]

As for Thulin's claim that EMC violated Section 1681s-2(b), that section applies only after a consumer (Thulin) has notified a credit bureau that he disputes the accuracy of the information provided by a creditor (EMC) and, in turn, the credit bureau has advised the creditor (EMC) of the dispute. See 15 U.S.C. § 1681s-2(b) (creditor's duty to conduct investigation and correct errors is triggered only "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency").[9] Here, Thulin has admitted that he never advised the credit bureaus that he was disputing EMC's reports of late payments. (See Thulin Dep. Tr. at 92.) Moreover, EMC has proffered evidence indicating that it never received notice from any credit bureau that Thulin had filed any such notice of dispute (Delaura Aff. ¶ 13; see also Thulin Dep. Tr. at 93-94), and Thulin has

---

[8] Thulin cites several cases for the proposition that "[c]ourts . . . allow[] individual consumers to proceed with causes of action alleging violations of furnishers of information to consumer reporting agencies." (Mem. in Opp'n at 7.) These cases, however, either do not concern claims under the FCRA or address claims *only* under Section 1681s-2(b), and not Section 1681s-2(a).

[9] Section 1681i(a)(2)(A) requires a credit bureau to promptly notify a creditor that the consumer has disputed the information the creditor provided to the bureau.

proffered no evidence to the contrary. As a result, no claim lies for a violation of Section 1681s-2(b) here. See, e.g., Young v. Equifax Info. Servs., Inc., 294 F.3d 631, 639 (5th Cir. 2002) (in absence of evidence establishing creditor had received notice of dispute from consumer reporting agency, Section 1681s-2(b) claim against creditor failed as matter of law); Kirk v. ED Fund, No. 06-4205-CV, 2007 WL 2226046, at *4 (W.D. Mo. Aug. 1, 2007) ("consumers may bring a private cause of action for violations of 15 U.S.C. § 1681s-2(b), *provided the consumer notifies the credit reporting agency of the alleged misinformation or dispute and the agency notifies the reporting entity*") (emphasis added).[10]

## V.     Thulin's belated request to supplement the record

Following oral argument on EMC's Motion, Thulin filed a Motion (Doc. No. 61) seeking leave to file a post-hearing brief, in order to "perfect[] the filings to provide a complete and fully accurate record for the [Court's] deliberation" in connection with EMC's Motion. (Leave Mem. at 1.) He summarizes six categories of evidence that he now seeks to submit to the Court in opposition to EMC's Motion. Purportedly, he did not previously submit this evidence "in the interest of not overwhelming the Court with a

---

[10] Thulin argues that he *directly* notified EMC that he disputed its reports of late payments and that this is sufficient under Section 1681s-2(b). (Mem. in Opp'n at 7.) Case law does not support that argument. See, e.g., Stafford v. Cross Country Bank, 262 F. Supp. 2d 776, 783 (W.D. Ky. 2003); Lowe, 253 F. Supp. 2d at 1254 (collecting cases). Nor does his argument comport with the language of Section 1681s-2(b), which triggers a duty to investigate and correct errors only after the creditor has "receiv[ed] notice pursuant to section 1681i(a)(2)." Under Section 1681i(a)(2), notice of a dispute may come only from the consumer-reporting agency.

massive tidal wave of documentation." (Id. at 3.)

The Court will not accede to Thulin's belated request, for several reasons. First, Thulin's concerns with overwhelming the Court, noble as they may have been, cannot be employed to circumvent the express requirements of Rule 56 or the Local Rules of this Court. Indeed, the Court is often presented massive numbers of documents in cases with far greater complexity than this; it is quite capable of sifting through those imposing piles in search of genuine issues of material fact.

Second, Thulin has offered shifting explanations for his failure to earlier submit this evidence. In his Opposition, Thulin repeatedly stated that he *had not yet gathered* the evidence necessary to respond to EMC's Motion. (See, e.g., Mem. in Opp'n at 2 ("we continue to seek information establishing a pattern of conduct on behalf of EMC consistent with the malfeasance that it has visited upon the Plaintiff"); id. at 9 ("Not all of the facts and evidence in this case has been gathered. Important evidence . . . has yet to be fully obtained."). Only a few weeks have passed since Thulin filed his Opposition, and yet – after questioning from the Court at oral argument – Thulin now purports to have a plethora of documents to support his claims. See Davidson & Schaaff, Inc. v. Liberty Nat'l Fire Ins. Co., 69 F.3d 868, 871 (8th Cir. 1995) (affirming denial of request to submit additional evidence in response to summary-judgment motion where party failed to explain why it did not submit evidence with its initial response to motion).

Third, and finally, permitting Thulin to submit this evidence now would create a dangerous precedent, pursuant to which litigants could submit greater and greater evidence

in successive oppositions to summary-judgment motions. Presenting evidence incrementally in order to obtain multiple bites of the summary-judgment apple would impinge on the interests of judicial economy and efficiency, not to mention the structure and purpose behind Rule 56 and the Local Rules. See Austin v. Neal, No. Civ. A. 95-3009, 1996 WL 448230, at *2 n.1 (E.D. Pa. Aug. 8, 1996).

Simply put, the time for Thulin to submit his evidence passed long ago; Thulin has articulated no persuasive reason why he should be permitted to do so now.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is **ORDERED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. No. 46) is **GRANTED** and Plaintiff's Amended Complaint (Doc. No. 6) is **DISMISSED WITH PREJUDICE**;[11] and

2. Plaintiff's Motion for Leave to Submit Post Summary Judgment Hearing Brief (Doc. No. 61) is **DENIED**.

Dated: October  16 , 2007  s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge

---

[11] EMC's counterclaims against Thulin remain pending.